IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| REGINA RAYNOR | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: |
| | ) |
| | ) |
| ROBERT A. MCDONALD, | ) **JURY TRIAL DEMAND** |
| SECRETARY, | ) |
| DEPARTMENT OF VETERANS | ) |
| AFFAIRS; | ) |
| | ) |
| | ) |
| Agency. | ) |

## COMPLAINT

COMES NOW, Regina Raynor, the above-named plaintiff and pursuant to Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101, et seq., 42 U.S.C. § 2000e *et seq.* (Title VII of the Civil Rights Act of 1964) as amended by the Civil Rights Act of 1991, and the Rehabilitation Act of 1973, for employment discrimination on the basis of disability (known association with a disabled individual), and retaliation for opposition to discrimination and EEO activity, and hereby submits her Complaint against the above-named defendant on the following grounds:

JURISDICTION AND VENUE

1.

The Court possesses subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This action is authorized by the Constitution of the United States of America, The Rehabilitation Act of 1973, Section 703 of 42 U.S.C. §§ 2000e-2(a), section 107(a) of the Americans with Disabilities Act of 1990, 42 U.S.C. §12117(a), which incorporates by reference sections 706(f)(1) and 706(f)(3) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5(f)(1) and (3), and section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.  The amount in controversy exceeds the sum of Seventy Five Thousand Dollars, exclusive of costs and attorneys fees.

2.

This Court possesses jurisdiction over the persons of defendants. Defendant Department of Veterans Affairs is located within the Northern District of Georgia. In addition, the acts of which plaintiff complains all occurred within this District, specifically the Atlanta Veterans Affairs ("VA") Medical Center at 1670 Clairmont Road, Decatur, GA 30033.

3.

Venue in this District and division is proper under 28 U.S.C. § 1391 as some or all of the defendants are located in the Northern District of Georgia, Atlanta Division, and the unlawful acts complained of herein occurred in this district at the Atlanta VA Medical Center. The employment records relevant to the challenged employment action are maintained and administered in this district.

PARTIES

4.

Plaintiff, Regina Raynor is a resident of this judicial district and her address is 2359 Strand Avenue, Lawrenceville, Georgia 30043.  At all times relevant hereto, Plaintiff has a daughter who has been living with impairments that are disabilities within the meaning of the ADA. At all relevant times Plaintiff was working as a staff nurse at the Atlanta VA Medical Center.

5.

Defendant, Robert A. McDonald is the secretary for the Department of Veterans Affairs and can be served at 810 Vermont Avenue, NW, Washington, DC 20420.  He can also be served by way of his attorneys at the Office of General Counsel at 1700 Clairmont Road, Decatur, Georgia 30033, the U.S. Attorney General Loretta Lynch at 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001, and the U.S. Attorney for the Northern District of Georgia at the Richard B.

Russell Federal Building, 75 Ted Turner Drive SW, Suite 600, Atlanta, GA 30303-3309.

6.

The responsible management officials ("RMO's") in this Complaint are Tomiko Thornhill, Judy Edge, and Seaton West. Timiko Thornhill was an assistant nurse manager, Judy Edge was the nurse manager, and Seaton West was an associate executive nurse. At all relevant times the RMO's were plaintiff's first line supervisor, second line supervisor, and third line supervisor, respectively.

EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

7.

On February 5, 2013, Plaintiff timely initiated informal contact with The United States Equal Employment Opportunity Commission ("EEOC" or "EEO") counselor as a federal employee pursuant to 29 C.F.R. § 1614.105. Plaintiff renewed her informal contact on April 4, 2013. On July 9, 2013, Plaintiff timely filed a Formal Complaint of Discrimination pursuant to 29 C.F.R. § 1614.103.

8.

On February 24, 2016, the EEOC Administrative Judge issued an Order Entering Judgment in favor of Defendant. On March 18, 2016, The Defendant issued a Final Agency Decision accepting and implementing the Order Entering

Judgment. The Final Agency Decision was received by Plaintiff's counsel on March 21, 2016. The Final Agency Decision provided Plaintiff with a notice of right to civil action within 90 days. A copy of the Final Agency Decision implementing the administrative judge's Order Entering Judgment is attached hereto as Exhibit A. Plaintiff timely files the instant complaint within the 90-day period set forth in said notice.

## FACTUAL ALLEGATIONS

9.

The Department of Veterans Affairs, Atlanta VA Medical Center, is a federal agency.

10.

At all relevant times, Plaintiff worked as a staff nurse at the Atlanta VA Medical Center.

**Shift Changes**

11.

Plaintiff's daughter was diagnosed with Pediatric Autoimmune Neuropsychiatric Disorders Associated with Streptococcal Infections ("PANDAS"), a disease that affects major bodily functions of the immune system and neurological system, and specifically the basal ganglia section of the

brain. This requires Plaintiff's daughter to be home-schooled by Plaintiff because of the risks associated with exposure to Streptococcal infections which can trigger an exacerbation of PANDAS illness in Plaintiff's child. The illness affects the child's thinking, concentration and learning daily. During episodes of exacerbation her breathing, eating, weight and sleeping is affected.

12.

At all relevant times, the RMO's were aware that Plaintiff had a daughter with a disability and that Plaintiff's daughter had to be home schooled.

13.

Plaintiff's work shift was from 5AM to 2PM. Plaintiff's start and end time allowed her ample time to home school her daughter.

14.

In October and November of 2012, on two occasions, RMO Judy Edge promised Plaintiff that her shift would not be changed because RMO Edge understood Plaintiff homeschooled her child due to her PANDAS.

15.

In early January of 2013, RMO Tomiko Thornhill asked Plaintiff if she would take the four day workweek 10 hour shift from 5:30PM to 4:00PM. Plaintiff reminded Ms. Thornhill that Plaintiff's current schedule allowed her to home school her disabled daughter. Ms. Thornhill became visibly upset and walked away

abruptly. Ms. Thornhill stated "she needs to send her child to school like everyone else."

16.

On January 24, 2013, RMO Judy Edge informed Plaintiff that Plaintiff's schedule would be changed from her current 5:30AM -2:00PM shift to the 8:30AM-5:00PM shift.

17.

On February 5, 2013, Plaintiff hand delivered a letter to her third line supervisor, Sandy Leake, respectfully protesting the abrupt change of her shift and reminding management that her child's illness requires Plaintiff to be home early. Plaintiff reminded management that both the staff and the patients needed Plaintiff in the 5:30AM shift.

18.

The "CC" section of the above-described February 5, 2013 letter noted to whom the Plaintiff delivered the letter, which included the Judy Edge, Seaton West, and the EEO office.

19

Shortly after submitting the above-described February 5, 2013 letter, Plaintiff's shift was permanently changed to the 8:30AM-5:00PM shift.

20.

Notwithstanding the above-described shift change, Judy Edge offered Plaintiff a four day workweek ten hour 7:30AM to 6:00PM shift.

21.

Plaintiff accepted the four day workweek, ten hour shift because she already lost the benefit of her 5:30AM, 5 day workweek schedule when management abruptly changed it. Plaintiff accepted the four day workweek, ten hour shift so that she could enjoy the benefit of having one day off per week to homeschool her daughter.

22.

Plaintiff confirmed her acceptance of the four day workweek, ten hour shift for 7:30AM to 6:00PM via email to RMO Judy Edge. Additionally, the schedule was posted on the scheduling board.

23.

On March 21, 2013, Shortly after Plaintiff sent management an email on March 15, 2013 complaining about hostile work environment and harassment, RMO Judy Edge informed Complainant she would not honor the 7:30 to 6:00PM shift change, instead offering Plaintiff a five day workweek schedule from 7:30 to 4:00, or a ten hour workweek schedule from 8:30 to 7:00PM.

24.

Given the choices provided, on April 2, 2013 Plaintiff chose the earliest five day workweek shift available at 7:30AM to 4:00PM.

25.

Plaintiff's Union Master Contract states that management shall encourage and support registered nurses having meaningful input into their schedules and that management will not change a schedule once it is posted. Defendant's internal directives and memorandums reference and confirm the same.

26.

At all relevant times prior to Complainant's EEO contact, Defendant was flexible with other similarly situated staff nurses in allowing them to choose their schedule and times. Additionally, In the prior year, in 2012, Plaintiff was granted ten hour shifts that started earlier than 8:30AM.

27.

On August 1, 2013, RMO Tomiko Thornhill unilaterally changed Plaintiff's schedule again, to a later time. This time changing it to 8:30AM to 5:00PM.

28.

On the same day, a new hire, Dylesha James, was placed in the earlier 7:00AM slot as a charge nurse. Notwithstanding Plaintiff's seniority over Ms.

James, Plaintiff was denied the same charge nurse position or opportunity for the 7:00AM shift.

**Written Counseling**

29.

On April 4, 2013, Plaintiff filed an informal EEO complaint. RMO Judy Edge was contacted by the EEO department and thus became aware of the informal EEO complaint almost immediately.

30.

On April 12, 2013, RMO Judy Edge provide Plaintiff with a written counseling and reprimand. The counseling admonished Plaintiff because patients did not receive post operative radiologic exams. Plaintiff had never received a written reprimand/counseling prior to her informal EEO complaint.

31.

Plaintiff submitted numerous Agency policies, directives, national safety guidelines, and communications with a chief surgical consultant to demonstrate that Plaintiff performed the proper procedures regarding X-rays.

32.

After bringing the Agency's X-ray policy violation to light, on June 24, 2013, RMO Seaton West forced Plaintiff to train the PACU staff on the subject.

No other PACU employees had to train their co-workers on a matter for which they had been counseled.

33.

Defendant refused to rescind the written counseling regarding Plaintiff's Xrays.

**Other Retaliatory Acts**

34.

On April 18, 2013, Plaintiff's Special Advance Performance ("SAP") award was denied.

35.

On May 22, 2013, Plaintiff's previously approved union stewart training request was denied mere days before the training was to occur.

36.

On January 24, 2014, Plaintiff's performance rating was downgraded.

COUNT I-DISABILITY DISRIMINATION

37.

Plaintiff realleges the preceding paragraphs of this Complaint.

38.

Title I of the ADA, 42 U.S.C. §§ 12111-12117, prohibits covered entities from discriminating against people with disabilities in the terms, conditions or privileges of employment. This prohibition similarly protects employees who are associated with individuals with a known disability.

39.

Plaintiff's daughter's physical impairments substantially limit major life activities, such that she is a person with a disability within the meaning of the ADA.  Plaintiff's child's ailments affect major bodily functions i.e. the immune system and neurological system and has substantially limited major life activities for longer than 6 months and at this point may continue indefinitely.

40.

Defendant regards Plaintiff's daughter as having a physical impairment that substantially limit one or more of her major life activities, such that Plaintiff's daughter is a person with a disability within the meaning of the ADA.

41.

Plaintiff has a record of her daughter's physical impairments that substantially limit one or more of her major life activities, such that Plaintiff's daughter is a person with a disability within the meaning of the ADA.

42.

Management was aware that Plaintiff had a known association with a person with a disability, specifically Plaintiff's daughter.

43.

By taking adverse action by changing Plaintiff's schedule multiple times - acts that were motivated by management's animus toward Plaintiff's association with a disability - and by intending to harm Plaintiff by proxy, Defendant is liable for discrimination on the basis of Plaintiff's association with a person with a known disability.

COUNT II-RETALIATION FOR OPPOSITION TO DISCRIMINATION

44.

Plaintiff filed EEO complaints and otherwise made EEO contact, alleging discrimination as described above.

45.

The prior EEO complaints named the same Responsible Management Officials ("RMO's") complained of in the instant matter.

46.

At all relevant times, the RMO's were aware of Plaintiff's EEO activity prior to taking the adverse actions complained of herein.

47.

Defendant's actions were wrongful and illegal where the actions were motivated by Plaintiff's prior EEO activity. Specifically, Defendant changed Plaintiff's schedule multiple times after Plaintiff initially made EEO contact on February 5, 2013 and refused to change it back to an earlier time, notwithstanding Plaintiff's seniority and Defendant accommodating similarly situated employees. Defendant issued Plaintiff a written counseling after Plaintiff filed an informal EEO complaint on April 4, 2013, forced Plaintiff to train her coworkers, and denied Plaintiff's SAP award and denied Plaintiff's previously approved union Stewart training. Defendant downgraded Plaintiff's performance evaluation after Plaintiff filed a formal EEO complaint on July 9, 2013.

48.

The adverse actions by management were sufficient to dissuade a reasonable employee from making a charge of discrimination.

COUNT III-HARASSMENT AND HOSTILE WORK ENVIRONMENT

49.

Plaintiff realleges the facts alleged in the preceding paragraphs of this Complaint.

50.

Plaintiff belonged in a protected class where she engaged in prior EEO activity and she is associated with a person with a known disability.

51.

For reasons discussed above, Defendant lacked a legitimate non-discriminatory reason for its actions. Thus, Plaintiff's protected class motivated Defendant's adverse actions against Plaintiff.

52.

The adverse acts complained of were sufficiently severe and pervasive where they occurred with frequency, over a long period of time, and where the acts had the purpose or effect of unreasonably interfering with a term or condition of Plaintiff's employment, and created an intimidating, hostile, and offensive working environment.

53.

Plaintiff was severely damaged as a result of Defendant's action, losing wages and benefits from time taken off work due to medical ailments caused by the discrimination, and suffering the stigma and loss of professional standing associated with Defendant's discriminatory treatment of Plaintiff. Plaintiff is entitled to compensation for mental anguish, lost benefits and lost wages and the other relief hereinafter requested.

54.

Defendant's actions caused Plaintiff to suffer mental and emotional distress, entitling Plaintiff to compensatory damages pursuant to 42 U.S.C. § 1981a

55.

Defendants have engaged in discriminatory practices with malice and reckless indifference to Plaintiff's federally protected rights.

PRAYER FOR RELIEF

56.

WHEREFORE, Defendant prays for a judgment as follows:

A. That the Court grant Plaintiff compensatory damages for the humiliation, emotional distress, and other damages caused by Defendant' conduct;

B. That the Court grant Plaintiff all employment benefits she would have enjoyed had she not been discriminated against;

C. That the Court grant Plaintiff the expenses of litigation, including reasonable attorney's fees, pursuant to Title VII, and 42 U.S.C. § 1988;

D. That the Court grant Plaintiff a jury trial;

E. That the Court grant all other relief this Court deems just and equitable.

Respectfully Submitted,

CRAYON LAW FIRM

/s/ Kevin C. Crayon II, Esq.
Georgia Bar No. 903973
Attorney for Plaintiff

125 Townpark Drive, Suite 300
Kennesaw, Georgia 30144
Office: (678) 653-6645
Fax: (888) 850-3845
kevin@crayonlawfirm.com