## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| REGINA RAYNOR : | |
| : | |
| Plaintiff, : | |
| : | Civil Action No. |
| v. : | |
| : | 1:16-CV-01823-ELR-JKL |
| DAVID J. SHULKIN, Secretary, : | |
| Department of Veterans Affairs : | |
| : | |
| Defendant. : | |

## DEFENDANT'S REPLY IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

David J. Shulkin, Secretary of the Department of Veterans Affairs ("Defendant" or the "VA"), has moved for summary judgment. He hereby files his Reply in Support of Motion for Summary Judgment, showing the Court as follows:

## ARGUMENT AND CITATION TO AUTHORITY

**A.     Plaintiff cannot establish a prime facie case of disability discrimination.**

Plaintiff fails "to establish a prima facie case because [s]he did not demonstrate that [her] daughter's medical condition… was a determinative factor" in her shift change. *Cusick v. Yellowbook, Inc.*, 607 F. App'x 953, 955 (11th Cir. 2015). In response, Plaintiff claims that Ms. Thornhill's write-up of Plaintiff's work-related issues in late 2012 shows "motive for RMO Thornhill to use Plaintiff's

1

daughter's disability to hurt Plaintiff once RMO Thornhill gained the ability to independently change the schedules." Opposition at 10.

This theory has a number of flaws. Ms. Thornhill had no independent ability to change Plaintiff's schedule; the decision to change Plaintiff's schedule in January 2013 was made by Ms. Edge. EEOC Hearing at 307. Plaintiff alleges management knew of her daughter's condition in April 2011, but leaves unexplained how this transformed into discriminatory animus only years later. Even if Ms. Thornhill were the decider, Plaintiff offers no evidence that the "work-related conflicts" in November 2012 were the determinative cause for her shift change. All Plaintiff actually alleges is that Ms. Thornhill was motivated by "work-related conflicts with Plaintiff," not by discriminatory animus. That Ms. Thornhill might know the change would be adverse for Plaintiff is irrelevant; this is not a reasonable accommodations case. Plaintiff must show that animus related to her daughter's disability was the reason for the shift change. *See Cusick,* 607 Fed. Appx. at 954. She fails to do so.

**B.   Plaintiff cannot establish a prime facie case of retaliation.**

Plaintiff must show: (1) a protected activity; (2) an adverse employment action; and (3) a causal connection between the protected activity and the adverse action. *See Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000).

Plaintiff's February 5, 2013, letter does not qualify as a protected activity as it fails to allege any unlawful practice or discrimination. *See* Exhibit B to Defendant's SOF. Plaintiff responds that contacting an internal EEO counselor to allege discrimination constitutes participation. Opposition at 12. This is irrelevant. Plaintiff's letter, even if copied to the EEO office, does <u>not</u> allege discrimination. *See Murphy v. City of Aventura*, 383 Fed. App'x. 915, 918 (11th Cir. 2010). This precludes the January 2013 shift change and the denial of her Special Advance Performance ("SAP") award, as they occurred before any protected activity.

Plaintiff fails to show that the remaining VA actions constitute adverse employment actions. Plaintiff cites *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1283 (11th Cir. 1999), for the proposition that "undeserved negative job evaluations" and "disadvantageous transfers" could constitute adverse actions. The Eleventh Circuit has since deemed this a remark made in dicta. *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1242 n.3 (11th Cir. 2001). More importantly, Plaintiff also fails to cite the rest of that paragraph in *Graham*, which emphasized that "some threshold level of substantiality ... must be met for unlawful discrimination to be cognizable under the anti-retaliation clause." 193 F.3d at 1283.

None of Plaintiff's claims rise to that level, be it her counseling for admittedly failing to perform x-rays as ordered (removed from her file after 60 days), the denial

of her request for a ten-hour shift, her one-hour shift change on August 1, 2013, or her inability to attend a one-day union steward training. *See, e.g.*, *Coney v. Dep't of Human Res. of State of Ga.*, 787 F. Supp. 1434, 1442 (M.D. Ga. 1992) (holding that "a nonthreatening written reprimand, which is later removed from an employee's personnel file, is not an adverse employment action."); *Barnes v. Crowne Investments, Inc.*, 391 F.Supp.2d 1108, 1115 (S.D. Ala. 2005) ("[T]he denial of lateral transfers are generally not considered to be adverse employment actions.").

Similarly, Plaintiff cannot show that her 2013 "Satisfactory" rating constituted an adverse employment action. *See Merriweather v. Alabama Dep't of Pub. Safety*, 17 F. Supp. 2d 1260, 1274 (M.D. Ala. 1998), *aff'd* 199 F.3d 443 (11th Cir. 1999) ("lower employee evaluation scores which still meet the employer's expectations for employee performance and are not used as the basis for any employment detriment are not 'adverse employment action'…"); *Meredith v. Beech Aircraft Corp.*, 18 F.3d 890, 896 (10th Cir. 1994) (indicating that although plaintiff characterized her evaluation as lower than previous evaluations, this did not establish an adverse action because it was undisputed that the evaluation was "satisfactory").

Plaintiff is unable to show causation for her other allegations. She admits that the SAP board had no knowledge of her activity, but claims that the board was tainted by Ms. West. Opposition at 14. However, the "cat's paw" theory only applies where

4

the decisionmaker merely "rubber stamp[s]" the recommendations as "a mere conduit for the harasser's discriminatory animus." *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1249 (11th Cir. 1998). Plaintiff offers no evidence that the board acted as a rubber-stamp; indeed, Ms. West's memorandum is positive and nowhere recommends denial of Plaintiff's request. *See* EEOC Hearing at 462-464; West Memorandum, attached to Smith Dec. as Attachment 7.[1]

Plaintiff fails to show that her 2013 "Satisfactory" performance rating, even if it constituted an adverse employment action, was caused by retaliation. The rating occurred more than five months after her last protected activity and Plaintiff proffers no other evidence of causation. *See Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) ("[I]n the absence of any other evidence of causation, a three and one-half month proximity between a protected activity and an adverse employment action is insufficient to create a jury issue on causation.").

---

[1] Plaintiff asserts that Ms. West influenced the SAP board's decision by contacting the chair of the board and serving as co-chair. Opposition at 14-15. The e-mail cited shows only that a discussion occurred by April 25, 2013, after the decision, and Ms. West testified undisputedly that she discussed the decision with Ms. Williams only after it was made. *See* EEOC Hearing at 468-472. Plaintiff's only evidence that Ms. West was "co-chair of the Board" is her own testimony, contradicted by the board decision listing its members, and by Ms. West's testimony. *See* EEOC Hearing at 468-471; NPSB Decision, attached to Smith Dec. as Attachment 8.

In response, Plaintiff argues that her case involved "an annual evaluation, which obviously only occurs once per year." Opposition at 15. Plaintiff cites no case holding the frequency of the employment action negates the proximity requirement. *See Seldon v. Total Sys. Servs., Inc.*, 653 F. Supp. 2d 1349, 1380 (M.D. Ga. 2009) (finding plaintiff failed to show retaliatory causation for her mid-year evaluation because she "received her unfavorable evaluation approximately four months after this alleged complaint…"). Plaintiff suggests that the date of Ms. Edge's EEO affidavit is relevant. Opposition at 15. It is not. The only dates that matter for temporal proximity are "the statutorily protected activity and the adverse employment action." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). There is no dispute that five months passed between Plaintiff's protected activity and her evaluation, too long to show causation.[2]

---

[2] Plaintiff cites cases from other circuits to claim that "temporal proximity is not determinative." Opposition at 15. In *Abbott v. Crown Motor Co., Inc.*, the court allowed a claim where eleven months had passed after the protected activity because the plaintiff had <u>other</u> evidence of causation, two statements by the defendant that showed retaliatory intent. 348 F.3d 537, 544 (6th Cir. 2003). Plaintiff offers no such evidence. In *Kachmar v. SunGard Data Systems, Inc.*, the court held dismissal was improper "on the basis of the complaint alone" and the plaintiff deserved "the opportunity to delve further into the facts by discovery." 109 F.3d 173, 178 (3d Cir. 1997). Plaintiff here conducted discovery and produced no evidence of causation.

### C. Plaintiff cannot establish a prime facie case of hostile work environment.

Plaintiff must show that: (1) she belongs to a protected group; (2) she has been subject to unwelcome harassment; and (3) the harassment was based on a protected characteristic of the employee. *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002). Plaintiff's complaint alleges that her protected class was someone who "engaged in prior EEO activity" and someone who "is associated with a person with a known disability." Complaint at ¶ 50. Plaintiff's claim fails because she has shown no evidence that any of the complained-of conduct was based on either protected characteristic. *See Redd v. United Parcel Serv., Inc.*, 615 F. App'x 598, 607 (11th Cir. 2015) (affirming summary judgment where plaintiff "failed to show a causal connection between his protected activity and the alleged adverse employment action."). Plaintiff cites conversations wherein management allegedly "degraded" her or were perceived as "out to get her." Opposition at 19. Even if this showed management disliked Plaintiff, it is insufficient to show that the <u>reason</u> they disliked her was discriminatory or retaliatory. Plaintiff offers no such evidence.

Plaintiff must also prove that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."

*Miller*, 277 F.3d at 1275.  Plaintiff's claims amount to no more than common workplace occurrences.  *See Gray v. City of Jacksonville, Fla.,* 492 F. App'x 1, 10 (11th Cir. 2012) ("In the contemporary American workplace, some measure of conflict between employers and employees—wrought by the personal and professional stressors that naturally occasion a group of individuals working together in close quarters—is inevitable.").  Plaintiff cites no cases showing that her allegations satisfy the objective requirements of frequency, severity, and humiliation.

Plaintiff claims, for example, that giving an in-service training regarding x-ray policy was "humiliating."  Opposition at 18.  Even if subjectively true, Plaintiff makes no showing that this was an objectively humiliating experience.  *See Brooks v. Grundmann*, 851 F.Supp.2d 1, 6 (D.D.C. 2012) ("[N]on-selection for a desirable position [and] assignment to undesirable duties ... do not establish a hostile work environment."). Plaintiff received praise for the training and used it as an example of her accomplishments for the year.  EEOC Hearing at 481; Opposition at 32-33.

Similarly, Plaintiff makes no showing that it would be objectively humiliating for a nurse to receive a written counseling for knowingly failing to follow doctors' orders, resulting in three patients failing to obtain x-rays after surgery.[3]  *See Ricci v.*

---

[3] Plaintiff falsely asserts that management placed patients in her file that were not hers, and refused to remove the written counseling from her file.  Opposition at 18. The undisputed evidence shows the inclusion of the additional file was accidental

8

*Kerry*, No. 11-CV-2185 RLW, 2013 WL 5329049, at *9 (D.D.C. Sept. 23, 2013) (holding that a "standalone incident of informal counseling or discipline—that did not carry any adverse consequences in and of itself—is a [] routine, work-related action that is insufficient to support a viable hostile work environment claim.").

The same is true of Plaintiff's remaining claims: that her union steward training was cancelled; that her request for a ten-hour shift was denied; that she did not receive a SAP award; or that her annual evaluation was rated "Satisfactory." These are not the makings of severe harassment or an objectively humiliating work environment. *See Cargo v. Alabama, Bd. of Pardons & Parole Div.*, 391 F. App'x 753, 755 (11th Cir. 2010) (rejecting plaintiff's allegations that "have the tenor of petty office squabbles"); *Bell v. Gonzales*, 398 F.Supp.2d 78, 92 (D.D.C.2005) (holding that "missed opportunities for teaching, travel, and high-profile assignments" and "reassignment to the Field Support Subunit" lacked the "severity that is required to establish a hostile work environment").

Finally, Plaintiff fails to show that the alleged conduct unreasonably interfered with her job performance. Instead, Plaintiff claims that she had "even more accomplishments in her 2013 year than her prior 2012 year." Opposition at 19.

---

and they were not referenced in the counseling, and the counseling is automatically removed after six months. EEOC Hearing at 321, 337-338.

### D.     Plaintiff cannot establish pretext.

Defendant has articulated legitimate, non-discriminatory reasons for its actions in detail in his Statement of Undisputed Material Facts and Motion for Summary Judgment.  Plaintiff responds that her claims should survive because "there are too many conflicting accounts" regarding these incidents.  Opposition at 20.  Plaintiff misunderstands her burden.  In order to withstand summary judgment, Plaintiff must show "significantly probative evidence to prove defendant's articulated reason is merely pretext for intentional discrimination." *Elrod*, 939 F.2d at 1470.  In order to show an employment action was a pretext for discrimination or retaliation, a plaintiff must "establish not that it was unusual but that the stated reason ... was a fabrication, designed to conceal an unlawful reason." *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 684 (7th Cir. 2000). "A 'pretext for discrimination' [or retaliation] means more than an unusual act; it means something worse than a business error; 'pretext' means deceit used to cover one's tracks." *Id.* (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146–47 (2000)).

A reason cannot be a "pretext for discrimination [or retaliation] unless it is shown both that the reason was false, and that discrimination [or retaliation] was the real reason." *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006). Plaintiff must point to specific, concrete facts showing that

10

the proffered reasons were pretextual and "[m]ere conclusory allegations and assertions will not suffice." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).

With respect to the January 2013 shift change, Plaintiff offers only substantive disagreement with management's reasons for moving her schedule, asking the Court to substitute her judgment as to the best use of nursing resources. Opposition at 20-22. But courts are "not in the business of adjudging whether employment decisions are prudent or fair. Instead, the sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999).

Regarding the ten-hour shift request, Plaintiff misstates the facts. There is no evidence that an agreement was ever made or finalized. While Ms. Edge said she was open to considering this request, Plaintiff never confirmed she wanted it (having previously rejecting it). EEOC Hearing at 314-316; Edge Aff. at 20-22; Edge email to Raynor, attached to Smith Dec. as Attachment 6. Plaintiff's mischaracterization of Ms. Edge's e-mail is inadequate to show pretext where Ms. Edge's sworn testimony is consistent with the documentation.[4] What Plaintiff alleges is a

---

[4] Plaintiff's union official admitted that Plaintiff was making an "assumption based on the email message." *See* Raynor Declaration, Attachment 1, Doc. 18-3 at 6.

11

misunderstanding between herself and Ms. Edge.  Indeed, Ms. Edge testified that if Plaintiff still wanted a ten-hour shift, she could have had one.  Edge Aff. at 24.[5]

Plaintiff complains that a new charge nurse was hired notwithstanding rules in the nurse bargaining agreement.[6]  Amongst the several legitimate reasons proferred by the VA for the selection of Ms. James (and ignored by Plainitff) is that management did not know Plaintiff was interested in the job.  EEOC Hearing at 252, 340-341.  In response, Plaintiff claims that "Plaintiff sent an email requesting to be placed in that slot."  EEOC Hearing at 365-366.  But Plaintiff only expressed an interest in the next rotation, <u>after</u> Ms. James had already been appointed.  *Id.*

Plaintiff then turns to the denial of her SAP award, a decision made by individuals who had no knowledge of Plaintiff's protected activity.  Plaintiff complains about the recommendation drafted by Ms. West, but Ms. West's unrebutted testimony is that she emphasized those aspects of Plaintiff's performance that she believed supported the request.  EEOC Hearing at 462-464.  All Plaintiff

---

[5] Plaintiff discusses at length union rules and the requirements regarding the posting of schedules.  Notwithstanding Plaintiff's failure to show that a valid, signed schedule was ever posted (as required by the policy she cites), and her reliance entirely on her own self-serving testimony, Plaintiff appears to be alleging a violation of the bargaining agreement, which is a claim not properly raised in this action.

[6] Again, at most this might constitute a violation of the collective bargaining agreement, which is a claim not properly raised in this action.

offers in rebuttal is her belief that the agency's policy required Ms. West to discuss four criteria.  Opposition at 26-27; Complainant's Exhibit 11.  The policy nowhere states all four criteria were required or must be separately identified and addressed.  *Id.*  That is Plaintiff's construction, with which Ms. West was free to differ.[7]

Turning to Plaintiff's written counseling, Plaintiff's response is that, after her counseling, she determined that the VA was not following proper x-ray policy.  *Id* at 88, 157-158; Opposition at 28-29.  Setting aside whether this is true, it is irrelevant.  When ordered to conduct these x-rays, Plaintiff did not contend it was against policy, inform the doctors who ordered the x-rays, or properly raise the issue through her chain of command who would further escalate the issue.  EEOC Hearing at 472-473.  Instead, she ignored the doctors' orders, three post-operative patients were discharged without receiving x-rays, and Plaintiff has sought to retroactively justify her conduct ever since.  EEOC Hearing at 148-149; Edge Aff. at 28-29.

Ms. West asked Plaintiff to provide a class to the PACU staff because of an identified patient safety need and confirmed with Plaintiff's union representative that this was not uncommon.  EEOC Hearing at 481; West Aff. at 20-23.  Plaintiff argues

---

[7] Even if Ms. West's memorandum was insufficient pursuant to this policy, this still is not adequate evidence that Ms. West's proffered explanation is pretextual or that the real reason was retaliatory animus toward Plaintiff.  As for Plaintiff's assertion that Ms. West was involved with the SAP board's decision, see footnote 1, *supra*.

that two other nurses had not heard of other PACU employees training co-workers on a matter for which they were counseled, but this show neither that Ms. West's explanation is pretextual nor that the real motive was retaliation.  Opposition at 30.

Plaintiff next turns to the denial of her union steward training.  Opposition at 30-31.  Shortly before the training, Ms. Thornhill learned of the resignation of one nurse and leave submitted by another, resulting in a critical PACU nurse shortage if Plaintiff attended the training.  EEOC Hearing at 233-236; Thornhill Aff. at 29-31.  Plaintiff's response is that "management" knew that the nurse had submitted her resignation a month earlier; Plaintiff offers no evidence that Ms. Thornhill knew.  As to the other nurse on leave, Plaintiff fails to show why that nurse's leave should have been denied instead of her own, how this shows that Ms. Thornhill's explanation is pretextual, or any evidence that the real reason for the cancellation was retaliatory.

Finally, with respect to her 2013 evaluation, Plaintiff does no more than argue that she thinks she deserved a higher than "Satisfactory" rating.  Opposition at 32-34. As throughout her Opposition, Plaintiff is asking this Court improperly to "act as a super personnel department that second-guesses employers' business judgments.' *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1092 (11th Cir. 2004).[8]

---

[8] Plaintiff ignores most of the reasons cited by her supervisors, found at Defendant's SOF ¶¶ 91-98, and only substantively disagrees with those she acknowledges.

Plaintiff fails to show "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 771 (11th Cir. 2005). "[T]he plaintiff must meet the employer's reason head on and rebut it, and may not simply quarrel with the wisdom of the reason." *Jefferson v. Burger King Corp.*, 505 Fed. Appx. 830, 833-34 (11th Cir. 2013). Plaintiff has done only the latter.

## CONCLUSION

For the foregoing reasons, Defendant respectfully submits that summary judgment should be granted.

Respectfully submitted,

JOHN HORN
UNITED STATES ATTORNEY

/s/ *Gabriel A. Mendel*
Gabriel A. Mendel
Assistant U.S. Attorney
Georgia Bar No. 169098
600 United States Courthouse
75 Ted Turner Drive, S.W.
Atlanta, Georgia  30303
Voice:     (404) 581-6000
Facsimile: (404) 581-4667

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| REGINA RAYNOR | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. |
| v. | : | |
| | : | 1:16-CV-01823-ELR-JKL |
| DAVID J. SHULKIN, Secretary, | : | |
| Department of Veterans Affairs | : | |
| | : | |
| Defendant. | : | |

## CERTIFICATE OF COMPLIANCE

I certify that the documents to which this certificate is attached have been prepared with one of the font and point selections approved by the Court in LR 5.1B for documents prepared by computer.

                                                    *s/ Gabriel A. Mendel*
                                                    Gabriel A. Mendel
                                                    Assistant U.S. Attorney

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| REGINA RAYNOR | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. |
| v. | : | |
| | : | 1:16-CV-01823-ELR-JKL |
| DAVID J. SHULKIN, Secretary, | : | |
| Department of Veterans Affairs | : | |
| | : | |
| Defendant. | : | |

## CERTIFICATE OF SERVICE

I certify that I electronically filed the within and foregoing with the Clerk of Court using the CM/ECF system.

This 11th day of May, 2017.

*s/ Gabriel A. Mendel*
Gabriel A. Mendel
Assistant U.S. Attorney